Bear Wilner-Nugent, OSB #044549
Bear Wilner-Nugent, Counselor and Attorney at Law LLC
620 SW 5th Avenue, Suite 1008
Portland, Oregon 97204
Phone: (503) 351-2327
Fax: (503) 914-6665
Email: bwnlaw@gmail.com
Attorney for Defendant Oriana Rebecca Korol

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 3:25-CR-00469-IM |
| Plaintiff, | **DEFENDANT'S TRIAL MEMORANDUM** |
| v. | |
| ORIANA REBECCA KOROL, | |
| Defendant. | |

Defendant Oriana Korol, through counsel, respectfully submits this memorandum to assist the court during trial preparations and trial. The superseding indictment charges defendant with one count of assault on a federal officer in violation of 18 U.S.C. §111. The underlying incident occurred outside of Portland's Immigration and Customs Enforcement (ICE) building on October 12, 2025. At the time of defendant's arrest, she was playing clarinet in a band of musicians who were standing across the street from the ICE building and peacefully protesting ICE operations and US immigration policy.

DEFENDANT'S TRIAL MEMORANDUM – Page 1

## I. Status of the Case

A pretrial conference is set for Thursday, April 30, 2026, at 2:00 p.m. A jury trial is set to begin on Tuesday, May 12, 2026, at 9:00 a.m.

## II. Factual Background

By giving this factual summary, defendant does not assume any portion of the government's burden of proof. Defendant need not prove the correctness of the following narrative. Instead, the government must attempt to prove it to be incorrect beyond a reasonable doubt.

Defendant plays clarinet with the Unpresidented Brass Band (UBB), which is a marching band. According to bandleader Miles Thompson, the purpose of UBB is to bring joy to the work of protesting. Members of the band frequently perform in banana costumes.

On October 12, 2025, members of UBB met at Elizabeth Caruthers Park in Portland's South Waterfront. The band was supporting ICE protesters and the Emergency Worldwide Naked Bike Ride. The band marched from the park to the ICE building. UBB's plan was not to be confrontational. Active band members ranged to as much as 80 years old. The plan was to leave if there were issues.

UBB had previously played in front of the ICE building approximately six to eight times. They had generally played in the same area each time. That area was across the street from the ICE building, in a gravel area north of the sidewalk. This area was not too close to the building and the band had previously felt comfortable performing there.

Defendant played clarinet with UBB. She attended the October 12 marching performance with her partner, Dani Cairns. They left their young daughter in the care of her maternal grandparents. The family had plans to reunite and eat together at a kid-appropriate hour after the

protest, and no plans for anyone to be arrested.

UBB played for about 30 to 60 minutes as the protest went on between UBB and the ICE building. Periodically, federal officers would emerge from the ICE facility's gates, push the crowd in the street back, and make way for vehicles to enter and exit the facility. UBB was not in the street. The officers' forcefulness escalated with each sally.

The naked bike ride came through. The protest scene became very crowded and high-energy. After playing a little more, members of UBB began to feel ready to leave. They decided to wrap it up with one last song, the "Ghostbusters" theme.

Abruptly, a number of federal officers surged out of the ICE building and into the street. Some of the officers pushed and shoved protestors. As video footage to be played at trial demonstrates, several officers chased a man who they were seeking to arrest across the street and right into the middle of the band.

When this happened, defendant was standing right by the chainlink fence where UBB was performing. Near her were trombonist Stewart Downey, saxophonist Kathryn Hutchinson, trumpeter Jon Norstog, drummer George Collins, and drummer Dean Boudouris. The officers struggled with the man they had chased, taking him to the ground. In doing so, the officers also crashed into defendant and Mr. Boudouris, knocking Mr. Boudouris to the ground and giving him a bloody injury.

Defendant was caught up amidst the officers. For some reason, they grabbed her and threw her to the ground, knocking aside her clarinet. Officers were spraying pepper spray, and defendant was sprayed in the face and temporarily blinded. The officers pushed defendant down onto her face and stomach in an area full of gravel and mud puddles. They manhandled her and held her down forcefully before dragging her away into the ICE building, under arrest.

The government accuses defendant of kicking and biting Federal Protective Service Officer Carlos Perez during this overwhelming show of force by the group of officers.

### III. The Alleged Offense

Defendant is charged with violating 18 U.S.C. §111, which provides that anyone who "forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated [as a federal officer] while engaged in or on account of the performance of official duties" is subject to fines or imprisonment. A simple assault is a misdemeanor. Physical contact with the alleged victim or the intent to commit another felony is punishable by up to eight years in prison. Use of a deadly or dangerous weapon or the infliction of bodily injury enhances the potential period of imprisonment up to 20 years.

In this case, the government will be required to prove that defendant forcibly assaulted Officer Perez. Although Section 111 criminalizes a broader range of behavior than just forcible assault, defendant's superseding indictment charges her only with forcibly assaulting Officer Perez. A defendant may not be convicted based on conduct not alleged in her charging instrument. Merely citing Section 111 in the superseding indictment does not allow conviction of "all the unlawful acts listed in that statute" if those acts are "uncharged." *United States v. Pazsint*, 703 F.2d 420, 423 (9th Cir. 1983); *United States v. Stewart Clinical Laboratory, Inc.*, 652 F.2d 804, 807 (9th Cir. 1981) (explaining that "[i]n federal court a defendant may not be convicted of an offense different from that specifically charged by the grand jury").

### IV. Defenses and Jury Instructions

Defendant will offer a layered defense at trial, pointing out the government's inability to prove that she had the intent to assault Officer Perez and also raising a self-defense claim. Under the Fifth and Sixth Amendments, defendant is entitled to a fair opportunity to present these

defenses. Defendant may request jury instructions for any recognized defense theory supported by sufficient evidence that would allow a reasonable jury to find in her favor, even if those theories are otherwise mutually inconsistent. *See Mathews v. United States*, 485 U.S. 58, 62-63, 108 S. Ct. 883, 99 L. Ed. 2d 54 (1988).

> The legal standard is generous [because] a defendant is entitled to an instruction concerning his theory of the case if the theory is legally sound and evidence in the case makes it applicable, even if the evidence is weak, insufficient, inconsistent, or of doubtful credibility. A defendant needs to show only that there is evidence upon which the jury could rationally sustain the defense.

*United States v. Houston*, 648 F.3d 806, 816 (9th Cir. 2011) (quoting *United States v. Kayser*, 488 F.3d 1070, 1076 (9th Cir. 2007)). "If there are factual disputes in the record, the court is not permitted to weigh the evidence, make credibility determinations, or resolve conflicts in the proof. If the parties argue competing inferences, the court must draw all reasonable inferences in favor of the defendant's [defense] theory." *United States v. Perez-Rodriguez*, 13 F.4th 1, 19 (1st Cir. 2021).

## A. Lack of Culpable Mental State

Defendant intends to argue that she is not guilty of assault under 18 U.S.C. §111 because she lacked the requisite intent to make physical contact with Officer Perez. Section 111 is a general intent crime. *United States v. Feola*, 420 U.S. 671, 95 S. Ct. 1255, 43 L. Ed. 2d 541 (1975). As such, the statute "requires an intent to assault, not an intent to assault a federal officer." *Id.* at 684. In order to establish this intent, the prosecution must prove that defendant's actions were a willful attempt to cause physical contact and inflict injury on Officer Perez. To constitute an assault, an action must be "either a willful attempt to inflict injury upon the person of another, or . . . a threat to inflict injury upon the person of another which, when coupled with an apparent present ability, causes a reasonable apprehension of immediate bodily harm." *United*

*States v. Dupree,* 544 F.2d 1050, 1051 (9th Cir.1976). Physical contact is required to prove such an assault. *See* Ninth Circuit Model Jury Instructions, No. 8.1 (2022 ed.).

A key distinction must be drawn between forcible assault and other kinds of resistance. Non-assaultive physical resistance like tensing up or assuming a strong stance is insufficient to sustain a Section 111 felony conviction without additional contact. *United States v. Chapman*, 528 F.3d 1215, 1221 (9th Cir. 2008).

Defendant will argue that her conduct during her arrest was either non-assaultive physical resistance or reflexive, self-protective action which was not undertaken with the conscious purpose of inflicting injury on Officer Perez via her physical contact. As in *Chapman*, behavior like tensing up, locking arms under one's body, and refusing to submit to an arrest is not in and of itself assaultive conduct. Any other behavior alleged by the government to be assaultive will be shown to be either accidental and triggered by bodily imperative, or else not intended to make contact with or injure Officer Perez.

**B. Self-Defense**

Although self-defense is not an affirmative defense that requires advance notice to the court, defendant intends to introduce evidence that she was acting in self-defense, and specifically as a response to the excessive or unlawful force imposed on her by Officer Perez. "The prima facie burden [to raise a theory of self-defense] is not a high one." *United States v. Sanchez-Lima*, 161 F.3d 545, 549 (9th Cir. 1998) (defendant is entitled to a self-defense instruction when "there is any foundation in the evidence, even though the evidence may be weak, insufficient, inconsistent, or of doubtful credibility").

A self-defense claim includes two elements: a reasonable belief that the use of force was necessary to defend defendant or another against the immediate use of unlawful force, and a use

of force that was no more than reasonably necessary under the circumstances. *United States v. Biggs*, 441 F.3d 1069, 1071 (9th Cir. 2006); *United States v. Acosta-Sierra*, 690 F.3d 1111, 1126 (9th Cir. 2012). This inquiry both a subjective and objective component: defendant's belief about the fear of being attacked or the need to use force is evaluated subjectively, while the reasonableness of defendant's belief is evaluated objectively. For the subjective state, *see Sanchez–Lima*, 161 F.3d at 549 ("a rational jury could conclude that Sanchez–Lima reasonably believed that he was about to receive another beating"). For the objective state, *see Graham v. Connor*, 490 U.S. 386, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989) (force must be objectively reasonable under the circumstances).

Defendant's subjective belief about the excessive conduct used against her must be grounded in the immediate perception of an unlawful threat. *Biggs*, 441 F.3d at 1108-1109. That belief may be shown by testimony or evidence which implies defendant's fear about the officer's conduct or the threatening circumstances of the encounter. *United States v. Lynch*, 58 F.3d 389, 392-393 (8th Cir. 1995). "A reasonable apprehension of immediate bodily harm is determined with reference to a reasonable person aware of the circumstances known to the victim, not with reference to all circumstances, including circumstances unknown to the victim." Ninth Circuit Model Jury Instruction 8.3, comment (2022 ed.); *see also Acosta-Sierra*, 690 F.3d at 1121.

Defendant does not bear the burden of proof for a self-defense claim. Instead, she is only required to produce sufficient evidence that could permit a reasonable jury to find in her favor as to the claim. The burden then shifts to the government to prove the absence of self-defense beyond a reasonable doubt. *United States v. Pierre*, 254 F.3d 872, 876 (9th Cir. 2001) (district court's failure to give jury instructions that clearly indicated government had the burden of disproving self-defense was reversible error). *See also* 9th Circuit Model Jury Instructions 5.10

(self-defense); *Sanchez–Lima*, 161 F.3d 545.The jury must unanimously reject a self-defense claim to find defendant guilty. *United States v. Ramirez*, 537 F.3d 1075, 1083 (9th Cir. 2008).

Self-defense is predominantly a question of fact for the jury. The two questions of law for the court are whether the assaulted person was a federal officer and the definition of the federal officer's duties. *United States v. Green*, 927 F.2d 1005, 1007 (7th Cir. 1991). The jury is tasked with evaluating all other questions relevant to the claim. These include inquiries about the officer's authority and status, whether the officer was engaged in official duties or a personal frolic outside the scope of those duties, whether the assault took place on account of those duties, and whether defendant reasonably feared for their safety and believed self-defense was required. Depending on the factual circumstances of the case, they may also be required to decide additional questions such as whether the officer identified themself to defendant or whether defendant had a mistake of fact.

In the alternative to arguing lack of intent, defendant intends to argue that she engaged in self-defense following Officer Perez's use of excessive force while restraining her. "For purposes of Section 111, . . . [an] individual may make out an affirmative defense of self-defense against a federal law enforcement official who uses excessive force in a narrow range of circumstances." *Acosta-Sierra*, 690 F.3d at 1126. Ninth Circuit Model Jury Instruction 8.3 contemplates a self-defense claim in a scenario where the defendant did not know that their assailant was a federal employee, but in this case, "the model instruction would be inappropriate in a case where a defendant's theory of the case is self-defense against the use of *excessive* force by a federal law enforcement officer." *United States v. Span*, 970 F.2d 573, 577 (9th Cir. 1992) (emphasis in original). Defendant has instead proposed a modified jury instruction which is appropriate in the context of the excessive force claim.

One component of the excessive force inquiry is "whether the officer is acting within the scope of his employment, that is, whether the officer's actions fall within his agency's overall mission, in contrast to engaging in a personal frolic of his own." *United States v. Ornelas*, 906 F.3d 1138, 1149 (9th Cir. 2018). An officer who acts in bad faith is not acting within the scope of their official duties. *Span*, 970 F.2d at 580-581. Likewise, an officer who acts to punish free speech engages in bad-faith conduct. *Adams v. Kraft*, 828 F. Supp. 2d 1090, 1109 (N.D. Cal. 2011); *Sanderlin v. Dwyer*, 116 F.4th 905, 911 (9th Cir. 2024) (retaliation against protected speech violates clearly established law); *Winterrowd v. Nelson*, 480 F.3d 1181, 1185 (9th Cir. 2007) (same). Defendant acknowledges that Officer Perez is a Federal Protective Service agent and is therefore a federal officer as a matter of law.

### V. Disputed Evidentiary Issues

Defendant and the government each intend to file a few motions in limine, after in-person and telephonic conferral failed to resolve all issues. Those motions will speak for themselves. Additionally, during the parties' conferral, the topic of cumulative evidence objections by the government came up. Defendant addresses that topic here.

### A. Allegedly Cumulative Photographs

The government will argue that some of the photographs that defendant intends to introduce into evidence (Def. Ex. 107-120) are cumulative. *See* F.R.E. 403. Defendant respectfully disagrees. These photos show a sequence of actions between officers and defendant. Each of them is different, and even though they capture moments that are close in time, they display distinct and unique occasions during the incident which gave rise to the charges at hand. The photographs are relatively limited in number and, when taken together, provide a visual narrative of the incident that allows for different and more granular analysis of the interaction

between defendant and federal agents. Each of them provides significant probative value which outweighs any concern about their potentially cumulative nature. Likewise, they are not unfairly prejudicial, confusing, misleading, and do not waste the jury's time. Accordingly, they should all be admissible.

**B. Allegedly Cumulative Witness Testimony**

The government will also argue that testimony from certain defense witnesses is also cumulative under F.R.E. 403. The court should not exclude any defense witness's testimony in advance of trial for several reasons. First, each witness has a unique perspective on the events surrounding defendant's arrest. Each one has materially different testimony to offer regarding their perspective and their actions./ which other witnesses cannot testify to.

Second, it is currently unclear which witnesses will be best positioned to testify at trial. Defendant needs to balance witness availability and other logistical concerns when considering which witnesses to call and in what order to call them. Any court order which limits defense witness testimony before trial materially impairs defendant's ability to select appropriate witnesses and present her case. Any consideration of the potentially cumulative nature of defense witness testimony should be reserved for trial, whereupon it will be clear which witnesses are available and who defendant will actually be calling to testify. Before that time, any effort to exclude defendant's witness testimony as cumulative is premature.

## VI. Other Disputed Issues

The parties will submit separate contested jury instructions regarding the alleged offense and the defense of self-defense, together with concise legal authority for their requested instructions. The parties will note the government's objections to portions of or all of certain defense exhibits on the joint exhibit list, and defendant will separately submit the contested

exhibits. The parties will submit joint proposed voir dire questions in a form that notes objections to certain questions.

## VII. Areas of Agreement

The parties have agreed upon the balance of the jury instructions, as well as the verdict form. The parties do not intend to contest the foundation for any exhibits. Finally, defendant stipulates to the admissibility of government exhibits 1, 2, and 3 (two photographs and a video).

## CONCLUSION

For the reasons articulated here and in defendant's other contemporaneous filings, and to be made known on the record at the pretrial conference and at trial, defendant will ask the court to resolve each disputed question of law in her favor, and will ask the jury to acquit her.

Dated: April 9, 2026     Respectfully submitted,

/s/ Bear Wilner-Nugent   
Bear Wilner-Nugent, OSB #044549
Attorney for Defendant Oriana Rebecca Korol

**CERTIFICATE OF SERVICE**

I hereby certify that I served the foregoing DEFENDANT'S TRIAL MEMORANDUM on Andrew T. Ho and Katherine A. Rykken, Esqs., attorneys for plaintiff United States of America, via CM/ECF on April 9, 2026. I further certify that Mr. Ho and Ms. Rykken are registered CM/ECF users.

Dated: April 9, 2026

Respectfully submitted,

/s/ Bear Wilner-Nugent
Bear Wilner-Nugent, OSB #044549
Attorney for Defendant Oriana Rebecca Korol