SCOTT E. BRADFORD, OSB #062824
United States Attorney
District of Oregon
**KATHERINE A. RYKKEN, CSB #267196**
Katherine.Rykken@usdoj.gov
**ANDREW T. HO, OSB #185047**
Andrew.Ho@usdoj.gov
Assistant United States Attorneys
1000 SW Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | 3:25-cr-00469-IM |
| v. | **GOVERNMENT'S SUPPLEMENTAL TRIAL MEMORANDUM** |
| **ORIANA REBECCA KOROL,** | |
| **Defendant.** | |

On April 30, 2026, the Court held a Pretrial Conference in this case. On May 4, 2026, the Court issued an order on its pretrial rulings. ECF No. 55.

The United States provides the Court with this supplemental trial memorandum to address three issues. First, the government continues to oppose defendant's introduction of, and the court's instruction on, a self-defense theory. Pursuant to Ninth Circuit procedures and principles of fairness, the Court must rule pretrial on the admissibility of a self-defense claim. Second, the government requests that the Court preclude defendant from testifying as to any

**Government's Supplemental Memorandum                                        Page 1**

right to protect her "bodily integrity."  Third, the government seeks clarification of the Court's ruling on the admissibility of witness testimony and video exhibits in light of the Court's rulings on the government's motions in limine.[1]

**1.    Defendant Has Failed to Make the Requisite Prima Facie Showing that She is Entitled to a Jury Instruction on Self-Defense.**

In its pretrial conference order, the Court found that the video and screenshot evidence alone is insufficient for a prima facie showing of self-defense required for the jury to hear a self-defense instruction.  ECF No. 55 at 2.  The government agrees.  Because that evidence alone is insufficient, defendant *must* put forward some other or additional evidence to meet her burden to "make a prima facie showing" that she reasonably believed that force was necessary to defend against the immediate use of unlawful force and that her use of force was proportionate.  *Id*. (citing *United States v. Ehmer*, 87 F.4th 1073, 1130 (9th Cir. 2023)).  Without this prima facie showing, defendant is not permitted to offer evidence or argument on a self-defense theory, so there is no basis to reserve ruling to await the close of evidence.

The government asks this Court to resolve the matter pretrial.  Ninth Circuit procedures require it, and so do basic principles of fairness. *See, e.g.*, *United States v. Irvine*, No. 3:23-cr-00040-IM (D. Or. 2025) at ECF 111 (issuing pretrial rulings regarding an insanity defense); *see also, e.g.*, *United States v. Javier Francisco Vigil*, 3:22-cr-00307-MO (in which Judge Michael Mosman followed the same procedure, also with respect to an insanity defense).  It is, after all, the government's burden at trial to establish that a defendant was **not** acting in self-defense beyond a reasonable doubt; waiting until the end of trial before ruling on whether defendant has

---

[1] At the pretrial conference, the government proposed some additional voir dire questions related to defendant's membership in a band.  The government withdraws these questions and concurs with the Court that they risk alerting the jury to this case.

**Government's Supplemental Memorandum**                                   **Page 2**

met the threshold requirement to introduce that theory in the first place alleviates defendant from her initial burden and prematurely increases the government's burden—when a basis in law and fact has not been established for it.  Everything from the opening statements to witness questioning hinges on what the full scope of the Government's burden of proof will be, as well as the scope of relevant, admissible evidence.

### A. Defendant Has Offered No Proof to Establish a Prima Facie Self-Defense Theory.

As this Court acknowledged in its pretrial rulings, to present her self-defense theory, defendant must show that the theory "is supported by law and has some foundation in the evidence."  ECF No. 55 at 2 (citing *Ehmer*, 87 F.4th at 1130). Though the burden of production is not heavy, when the defendant's evidence, even viewed in the light most favorable to her, "is insufficient to sustain [an instruction of self-defense] even if believed, the trial court and jury need not be burdened with testimony supporting . . . the defense." *United States v. Bailey*, 444 U.S. 394, 416 (1980) ("The requirement of a threshold showing on the part of those who assert an affirmative defense to a crime is by no means a derogation of the importance of the jury as a judge of credibility."); *see also United States v. Davidson*, 108 F.4th 706, 710 (8th Cir. 2024) (holding it proper to require defendant to provide a pretrial proffer on the issue of self-defense). For example, Senior District Judge Anna J. Brown refused to give a self-defense jury instruction in *Ehmer* because the defendants failed to make a preliminary, prima facie showing that they faced an "imminent" threat.  The Ninth Circuit affirmed, agreeing that the defense failed to show that it was "reasonable to believe they faced an immediate use of force."  *Id.* at 1130.

To date, defendant has not made any offer of proof.  This is a preliminary question under Fed. R. Evid. 104 that should be heard by the Court either through testimony or an affidavit or

affidavits under oath.  The jury in this case, once the trial begins, should only hear evidence that is admissible and relevant to the issues they must decide.  *Bailey*, 444 U.S. at 416.  Furthermore, the basis of the alleged self-defense in this case is not necessarily a simple one.  The self-defense instruction has several alternatives: defense of self, defense of another,[2] or possibly both. Defendant must make a prima facie case for what legal and factual basis exists for her claimed defense before the burden can shift.

Defendant has not explained what she was defending herself from and instead simply asserts that she was responding to "excessive or unlawful force imposed on her by Officer Perez," and to "Officer Perez's use of excessive force while restraining her."  ECF No. 49 at 6, 8. She fails to explain what specific action led her to act in self-defense.  She should not be allowed to argue to the jury that she was responding to excessive force when she has not established "excessive force" factually or legally.  Moreover, a penumbral generalized allegation of excessive force ("For some reason, they grabbed her and threw her to the ground…" ECF No. 49 at 3) is insufficient to support a self-defense theory.  What theory of self-defense the defendant will assert is unclear, even after the pretrial conference.  Defense counsel referred several times to the possibility that the videos of other people being arrested by or interacting with law enforcement may form the basis for her self-defense claim.  But it is unclear whether defendant saw any of these and, even if she did, whether the law allows that kind of evidence in a self-defense claim.  The Court should require defendant to provide an offer of proof to justify introducing a self-defense theory.

---

[2] In an earlier pretrial meet and confer between counsel, defense counsel said that defendant was not raising a defense of others theory.

**Government's Supplemental Memorandum**                                              **Page 4**

A pretrial ruling on the legal and factual basis for an alleged self-defense theory in this case can be easily accomplished because the incident was captured on video. This is not a "he-said she-said" credibility battle of competing narratives whereby this Court (or the jury) needs to decide what happened based on testimony alone. What happened was recorded. The assault—including law enforcement's actions and defendant's conduct—are objectively viewable in their entirety in a few-minutes long video recording. This makes a pretrial ruling from the court, as a practical matter, relatively simple.

The video establishes that any discernable self-defense theory is not legally or factually supported. The video shows that defendant did not face "the immediate use of *unlawful* force" as required to support the self-defense theory. Nor does it support any *reasonable* belief that force was necessary, given that she was the aggressor. Defendant is the person who repeatedly chose to interfere with the arrest of another person, several times attempting to move officers away from the arrest. Nor does it support proportionality in defendant's response of kicking and then biting the officer who verbally told her not to interfere and pointed his finger to stop, then used his body to shield her from, again, interfering, and then pushed her back from the arrest scene when she persistently refused. There was nothing excessive about the officer's actions under the totality of circumstances; defendant chose to insert herself into the scene, ignore his instructions, and then kick and bite him after she was shoved away in the chaos.

Excessive force can be part of the evaluation of force as "unlawful" for the purposes of the self-defense instruction. *United States v. Ornelas*, 906 F.3d 1138, 1147 (9th Cir. 2018) ("the general self-defense instruction given at trial adequately covered [defendant's] resistance-to-excessive force theory"). But there must be prima facie proof of excessive force before such an instruction is merited. Claims of excessive police force are judged under the Fourth

**Government's Supplemental Memorandum**                                                    **Page 5**

Amendment's objective reasonableness standard. *Brosseau v. Haugen*, 543 U.S. 194, 197 (2004) (quoting *Graham v. Connor,* 490 U.S. 386, 388 (1989)). This requires balancing the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interest at stake. It considers factors such as the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect is actively resisting arrest or attempting to evade arrest by flight. *Graham*, 490 U.S. at 388 (1989).

This means that defendant's active and persistent interference with law enforcement's arrest of another person—as captured on the video tape—and the officer's response to get her to stop and then, ultimately, to arrest her when she kicked him after refusing to stop, is relevant, as is her decision to bite the officer while he tried to secure her. The Supreme Court said: "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. (citing *Terry v. Ohio*, 392 U.S. 1, 20–22 (1968)). "'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' *Johnson v. Glick*, 481 F.2d, at 1033, violates the Fourth Amendment." *Graham,* 490 U.S. at 396. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 397.

This case is like *United States v. Ebert*, 294 F.3d 896, 898-99 (7th Cir. 2002), where the Seventh Circuit upheld the refusal to read a self-defense instruction where the evidence did not meet legal and factual requirements of imminent unlawful force. Ebert, a federal prisoner, consumed alcohol and refused a breath test. He was taken to the prison's Physician Assistant's office and refused to get on an examination table for a physical examination. Ebert kicked one

**Government's Supplemental Memorandum**                              **Page 6**

of the officers who was trying to lift him onto the table, and he continued to kick towards

officers and a glass cabinet.  Ebert said before trial that he feared the officers would sedate him

with a shot and resisted their efforts in self-defense.  The court rejected that evidence and

defendant's subjective belief as a basis to give the instruction, because there was no imminent

use of unlawful force against him.  The court also found that Ebert's additional argument that he

did not have intent to assault the officer was inconsistent with his self-defense claim.  *Id.* at 898.

The same conflict arises in this defendant's trial memorandum.  *See* ECF No. 49, at 5-9 (arguing

both lack of intent and self-defense claims).

The government asks this Court to exercise its gatekeeping function and rule pretrial

whether defendant has met her burden to introduce a self-defense theory.  Given defendant's

failure to offer any proof to date, as well as the objective evidence in the video which this Court

has already found insufficient to establish self-defense, the Court should reject that theory and

rule on other evidentiary issues in accordance with that holding.

### B. A Self-Defense Jury Instruction is Inappropriate Because Defendant is the Initial Aggressor.

In addition, this Court should reject a self-defense theory because the facts demonstrate

that defendant is the initial aggressor.  "[A]n individual who is the attacker cannot make out a

claim of self-defense as a justification for an assault."  *United States v. Acosta-Sierra*, 690 F.3d

1111, 1126 (9th Cir. 2012)*; see also United States v. Urena*, 659 F.3d 903, 907 (9th Cir. 2011)

(upholding district court's refusal to give a self-defense instruction in part because "the evidence

was undisputed that it was [the defendant] who was the attacker, and thus he could not in those

circumstances successfully urge a self-defense theory").  The video evidence is clear that any

force used by the officers is a response to defendant's actions.

**Government's Supplemental Memorandum**                                    **Page 7**

The videos show that once FPS Officer Perez caught up with FPS Officer Marcum in the crowd, Officer Marcum was on top of the individual he was attempting to arrest. At that moment, defendant was standing to the right of Officer Marcum. Trial Exhibit 105 at 1:04. Defendant then moved to the front of Officer Marcum where drums were lying on the ground and appeared to move those drums and hand them off to another individual. *Id.* at 1:12. Defendant then walked over to the left of Officer Marcum, where Officer Perez is standing. *Id.* at 1:20.

Officer Perez held his arms outstretched and told the crowd, including defendant, to move back. *Id.* Officer Perez then began to push defendant back. *Id.* at 1:26. Instead of leaving and allowing the officers to complete the arrest, defendant moved closer to Officer Marcum and the arrestee. *Id.* at 1:30.

While Officer Marcum was attempting to gain control over the arrestee, someone from the crowd began to pull the arrestee away from Officer Marcum. Trial Exhibit 105 at 0:00. Another FPS officer tried to break the grip of the person pulling the arrestee by striking their arm, at which point, defendant grabbed Officer Marcum. *Id.* at 0:07. Officer Perez began pushing defendant back more forcefully and defendant let go of Officer Marcum. *Id.* at 0:08. Defendant stumbled and when she stood up again, looked directly at Officer Perez. *Id.* at 0:10. Officer Perez warned defendant to stop and pointed his finger in her face. *Id.* at 0:15. Another FPS officer deployed pepper spray that appeared to hit the side of defendant, and Officer Perez swept his left arm backwards, which led to defendant falling onto her back on the muddy ground. *Id.* at 0:17. While Officer Perez looked down at defendant, she reared back her right leg and kicked Officer Perez in the thigh. *Id.* at 0:20. Officer Perez's legs buckled from the kick and he started to arrest defendant. *Id.* at 0:21.

**Government's Supplemental Memorandum**                                        **Page 8**

After defendant rolled onto her front, Officer Perez grabbed onto her back and reached for her arms to place handcuffs on defendant. *Id.* at 0:23. While Officer Perez held defendant down, he signaled to another officer to assist with the arrest. *Id.* at 0:25. Defendant pulled her arms under her body. As Officer Perez attempted to grab defendant's arms to handcuff them, she moved her head toward Officer Perez's left arm and bit his forearm. *Id.* at 0:31. Officer Perez immediately pulled his left arm out from under defendant. *Id.* at 0:33.

Defendant was the initial aggressor. She interfered with FPS officers attempting to arrest another individual, including by refusing to move back and grabbing the FPS officer performing the arrest. Defendant's decision to grab Officer Marcum made her the initial aggressor and warranted FPS Officers pushing her back and deploying pepper spray. Because she was the initial aggressor, she cannot make out a claim of self-defense to justify her assault of Officer Perez.

**2. The Court Should Preclude Testimony on "Bodily Integrity" Based on Recent Case Law.**

The government's motion in limine number ten sought to preclude testimony from defendant's witnesses on legal conclusions that were the proper province of the Court and the jury. The Court granted this motion, but ruled that defendant could testify about defending "her bodily integrity." ECF No. 55 at 7-8. However, any right to bodily integrity is "general and abstract." Order in *Reach Community Development v. United States Department of Homeland Security*, No. 26-1575 (9th Cir. Apr. 27, 2026) at 11. Whether defendant has a right to bodily integrity from a particular government intrusion, in this case, officers pushing back an encroaching crowd and deploying pepper spray to arrest someone, depends on the country's "history and traditions." *Id.* at 10. "Bodily integrity" is a legal term and one that defendant has

**Government's Supplemental Memorandum**                    **Page 9**

not established is applicable to her case.  Therefore, this Court should preclude defendant from testifying that she was asserting a right to "bodily integrity" and instead require that her testimony keep to the facts.

**3.  Request for Clarification Regarding the Admission of Exhibits and Certain Witnesses.**

In its pretrial order, the Court granted in part the government's motion in limine number four that sought to limit the testimony of defendant's witnesses.  ECF No. 55 at 3.  The Court ruled that testimony from witnesses not about the alleged assault was excluded (with the exception of limited testimony about the defendant's post-protest plans), *id.* at 4, as was extensive and narrative testimony about the protest on October 12 and the moments immediately preceding the interaction between defendant and Officer Perez, *id.* at 4-5.

The Court also granted the government's motion in limine number nine that sought to exclude evidence of the acts of other protestors and officers.  ECF No. 55 at 6.  The Court ruled that it would allow such testimony to the extent defendant witnessed them.  *Id.*

However, the Court's order also stated that Exhibits 101, 102, and 103 were pre-admitted in full, despite these containing significant footage of interactions between officers and protestors other than Officer Perez and defendant.  ECF No. 55 at 8.  It is unclear from defendant's filings, what, if any of these interactions defendant witnessed.

The government requests clarification from the Court as to whether all of defendant's witnesses can testify to the contents of these exhibits if they observed what is depicted in the videos or whether only defendant, herself, can testify to the full contents of these videos, if she personally observed what is depicted in them.  Therefore, the government requests that the Court exclude the exhibits to the extent defendant cannot testify that she observed the events depicted.

**Government's Supplemental Memorandum**                                **Page 10**

With respect to witnesses other than defendant, it is unclear from the pretrial conference if those witnesses can also testify about anything other than the interaction between defendant and Officer Perez. It is the government's position that what other witnesses saw (except the alleged interaction) is irrelevant and improperly allows defense witnesses to vouch for defendant's subjective state of mind. The government requests clarity from the Court on this ruling.

Defendant provided interview memorandums of several witnesses. Defendant's amended witness list includes eight witnesses other than defendant. In the below table, the government summarizes the portions of the witness memoranda that could arguably address observations of the interaction between Officer Perez and defendant and explains why the government continues to oppose testimony from the below witnesses.

/ / / /

/ / / /

/ / / /

/ / / /

/ / / /

/ / / /

| Witness | Interview Memo | Government Objection |
|---|---|---|
| Dean Boudouris | Mr. Boudouris, a member of the band, stated that he saw agents charge into the protestors and was suddenly on his back on the ground. He was then walked to a first aid station. He did not witness any chemical being discharged. | There is no indication that Mr. Boudouris saw any interaction between Officer Perez and defendant. |
| George Collins | Mr. Collins, a member of the band, stated that he saw people crash into Mr. Boudouris. He helped Mr. Boudouris stand up and felt the effects of pepper spray, but did know where it came from. He also stated he saw defendant face down on the ground along the fence and that defendant was not resisting arrest. | There is no indication that Mr. Collins saw the interaction between Officer Perez and defendant that the government alleges constitutes the assault. Instead, it seems like Mr. Collins was focused on Mr. Boudourdis and only later saw defendant on the ground after the alleged assault. |
| Heather Huson | Ms. Huson states that she was filming Marcus Martinez and then later moved on to talk to defendant. | There is no indication that Ms. Huson saw the interaction between Officer Perez and defendant that the government alleges constitutes the assault. She appears to have talked to defendant after the alleged assault and her testimony should only come in to the extent it is consistent with the Court's pretrial ruling on Exhibit 106. |

**Government's Supplemental Memorandum**                    **Page 12**

| | | |
|---|---|---|
| Marcus Martinez | Mr. Martinez states that he was tackled by two agents and he was choked and sprayed by an agent. He does not make any observations about defendant until he meets her in the ICE facility. | There is no indication that Mr. Martinez saw the interaction between Officer Perez and defendant that the government alleges constitutes the assault and he only meets defendant at the ICE facility after both are arrested. |
| Jon Norstog | Mr. Norstog, a member of the band, states that agents knocked the band off their rhythm and knocked some of the band members down. He saw defendant on the ground and saw agents zip tie defendant's hands. | There is no indication that Mr. Norstog saw the interaction between Officer Perez and defendant that the government alleges constitutes the assault. He simply states that he saw defendant on the ground. |

Dated: May 5, 2026.

Respectfully submitted,

SCOTT E. BRADFORD
United States Attorney

*/s/ Katherine A. Rykken*
KATHERINE A. RYKKEN, CSB #267196
Assistant United States Attorney

*/s/ Andrew T. Ho*
ANDREW T. HO, OSB #185047
Assistant United States Attorney