Bear Wilner-Nugent, OSB #044549
Bear Wilner-Nugent, Counselor and Attorney at Law LLC
620 SW 5th Avenue, Suite 1008
Portland, Oregon 97204
Phone: (503) 351-2327
Fax: (503) 914-6665
Email: bwnlaw@gmail.com
Attorney for Defendant Oriana Rebecca Korol

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 3:25-CR-00469-IM |
| Plaintiff, | **DEFENDANT'S SUPPLEMENTAL TRIAL MEMORANDUM** |
| v. | |
| ORIANA REBECCA KOROL, | |
| Defendant. | |

Defendant Oriana Rebecca Korol, through counsel, respectfully submits this

supplemental trial memorandum concerning certain topics raised during the initial pretrial

conference on April 30, 2026, and in compliance with the court's order of May 6, 2026.

Defendant is charged with one count of assault on a federal officer in violation of 18 U.S.C. §111

following an incident that occurred outside of Portland's Immigration and Customs Enforcement

(ICE) building on October 12, 2025. At the time of her arrest, defendant was peacefully

protesting ICE operations and US immigration policy by playing clarinet in a band of musicians

DEFENDANT'S SUPPLEMENTAL TRIAL MEMORANDUM – Page 1

who were standing across the street from the ICE building.

## I. SELF-DEFENSE INSTRUCTION

The government continues to argue that defendant should be precluded from being able to raise or even discuss a self-defense claim until and unless she provides some sort of pretrial offer of proof or other prima facie evidentiary showing in advance of trial. (See Gov't Supp. Memo at 1-9). This argument is grounded in a serious misapprehension of applicable Ninth Circuit case law. It would needlessly impose a requirement on defendant which is fundamentally at odds with her Constitutional rights, particularly her Fifth Amendment right against self-incrimination. Accordingly, the court should follow established legal principles and adhere to its previous order reserving its ruling on the matter until after the close of the defense case, when it can evaluate all of the evidence adduced at trial and make an informed decision about whether to issue the self-defense jury instruction.

The government's legal basis for demanding a pretrial evidentiary showing is based on a fundamental misreading of the case law regarding self-defense. It again cites *United States v. Ehmer*, 87 F.4th 1073, 1130 (9th Cir. 2023) for the proposition that a prima facie showing is required before a self-defense instruction is issued. This statement is correct, as far as it goes, but nowhere in *Ehmer* does the Ninth Circuit indicate that the prima facie showing must be made before trial or that any mention of self-defense must be suppressed if a defendant does not make such a showing. There is nothing inherent in the prima facie showing requirement that demands that the showing be made before trial, or at any particular point before the self-defense instruction is issued.

In *Ehmer*, the appealing defendants had been convicted of depredation of government

property, but claimed that their digging of trenches around Malheur Wildlife Refuge buildings was lawful self-defense because they were acting in response to an imminent threat of assault by government agents. The court based its refusal to give the self-defense instruction on the premise that, because the trenches took hours to dig, they could not have been a response to an imminent threat of government use of force. *See Ehmer*, 87 F.4th at 1130. Crucially, this was a ruling predicated on the evidence developed in the case. That evidence logically must have been introduced during the government's and defendants' cases-in-chief. It could not have been fully and fairly evaluated until all evidence was submitted and evaluated. The court must have been able to identify and consider all evidence submitted against and on behalf of the defendants before determining if they had cleared the low bar for issuing a self-defense instruction.

Next, the government attempts to conflate several pretrial insanity defense rulings with this case's self-defense claim. There is a crucial difference between the two defenses, however. Federal Rule of Criminal Procedure 12.2 requires advance defense notice of an insanity claim, which permits the court time to order a mental competency evaluation and allows for pretrial motion practice regarding the applicability of the defense. In addition, under the Insanity Defense Reform Act of 1984, 18 U.S.C. §17, a defendant is required to prove the insanity defense by clear and convincing evidence, meaning that the burden of establishing that defense falls entirely on the defendant's shoulders.

Self-defense is diametrically opposite. There is no advance notice required for a self-defense claim. Once defendant establishes a prima facie case, the burden falls entirely on the government to disprove self-defense beyond a reasonable doubt with all jurors concurring. Defendant would still be allowed to raise a self-defense claim and request a self-defense jury instruction even if no notice at all were given and the matter was raised at trial. Establishing a

DEFENDANT'S SUPPLEMENTAL TRIAL MEMORANDUM – Page 3

requirement for a pretrial evidentiary showing simply punishes defendant for having the courtesy to identify triable issues in advance and provide the court and opposing counsel with an opportunity to prepare and address those issues in an organized, systematic fashion. Also, defendant's pretrial identification of a self-defense claim should provide the government ample opportunity to address its potential burden of disproving the self-defense claim, negating any need for a pretrial evidentiary showing or decision about the self-defense instruction.

It is notable that the government offers no other source of law for the proposition that a pretrial offer of proof is required before a self-defense claim is raised. This is because no such source exists, to the best of counsel's awareness. The one case approving a pretrial proffer cited by the government comes from the Eighth Circuit, which interprets common law self-defense principles differently than the Ninth Circuit. (Gov't Supp. Memo at 3 (citing *United States v. Davidson*, 108 F.4th 706, 710 (8th Cir. 2024)). A pretrial offer of proof requirement is not contemplated in the Ninth Circuit model jury instructions or in applicable case law regarding self-defense claims. Accordingly, the court should decline to impose such a requirement in this instance.

The government claims that defendant's evidence introduced to date is insufficient to establish defendant's prima facie case, but spends a great deal of time arguing in favor of its own purported evidence, which supposedly negates the elements of self-defense. (See Gov't Supp. Memo at 5-9). This is not a sufficient basis to reverse the court's decision to reserve a final ruling on the self-defense instruction until trial. The government jumps to a number of legal conclusions about issues like the lawfulness, reasonableness, and the excessive or un-excessive nature of the force used, but those issues are only properly decided once all evidence is received.

The government's arguments are one-sided. They do not properly consider the

perspective and testimony which defense witnesses will likely offer. The government cannot be sure that its witnesses will offer the testimony it assumes or that additional evidence will not change the legal calculus on these issues. Also, many of the issues the government argues about are matters for the jury sitting as factfinder, not the court.[1] Allowing the government to pre-litigate this issue before trial is effectively permitting it to put a thumb on the scale. To do so would require that the court consider this issue only from the government's perspective without contrary defense evidence.

Finally, requiring defendant to make an offer of proof before being permitted to raise a self-defense claim flies in the face of her constitutional rights, particularly her Fifth Amendment right not to be a witness against herself. Defendant is never required to make an evidentiary showing during her trial and cannot be compelled to testify in her defense. Although defendant has made known her intentions to testify and to present evidence, those decisions cannot be made final until the time is ripe. She could still simply choose to attack the government's evidence as insufficient through a motion for judgment of acquittal and never so much as say a word in court. Requiring a pretrial offer of proof compels defendant to offer evidence in some fashion about the factual events of her case and implicitly demands that she must testify on her own behalf in order to secure a complete defense. This runs contrary to our established understanding of the Fifth Amendment's guarantees. The court should thus decline the government's renewed request and maintain its previous ruling electing to defer any decision on a self-defense instruction to the end of trial, prior to the issuance of final jury instructions.

---

[1] For additional discussion of this topic, see Defendant's Trial Memorandum at 8.

## II. BODILY INTEGRITY

The government objects to the court's resolution of the government's motion in limine #10, permitting defendant to testify about efforts to safeguard her bodily integrity while interacting with law enforcement officers. The government attempts to use the decision in *Reach Community Development v. United States Department of Homeland Security*, No. 26-1575 (9th Cir. Apr. 27, 2026) to argue that defendant should not be allowed to refer to the term "bodily integrity" during her testimony. Revisiting this decision is unnecessary for several reasons.

First, while defendant may well testify about the actions she took to defend her bodily integrity, it is substantially less clear that she would use those particular words in that order to explain those actions. Even if she did, it is doubtful that ether she or the jurors in her case would understand that to be a reference to be to a specific principle of substantive due process case law such as appears in *Washington v. Glucksberg*, 521 U.S. 702, 117 S. Ct. 2258, 138 L. Ed. 2d 772 (1997) instead of as a more general discussion about the factual circumstances of the case offered by a lay witness. This case is not an appellate examination of the legal theory animating defendant's claims, but rather a trial on the factual merits of the indictment.

Second, *Reach* is inapposite because its discussion of bodily integrity centers on whether residents living near the Portland ICE headquarters have a substantive due process right to be free of exposure to tear gas, pepper spray, and other less-lethal crowd control weapons. The discussion of bodily integrity in this context was shaped by *Glucksberg*'s discussion of how to identify substantive due process rights not specifically enumerated in the Constitution. Per *Glucksberg*, those rights must be "deeply rooted in this Nation's history and tradition" and "implicit in the concept of ordered liberty." *Glucksberg*, 521 U.S. at 721. Unlike the nebulous right of bystanders to be free of exposure to arbitrary amounts of less-lethal weapons, the right to

protect one's own bodily integrity via self-defense is fundamentally rooted in America's history and tradition, extending back nearly to Norman England and having been consistently read into American criminal law from the very beginning of our existence as colonies of the crown. Likewise, self-defense is fundamentally implicit in the concept of ordered liberty, drawing strength from the Second, Third, Fourth, Fifth, Ninth, and Fourteenth Amendments, centuries of case law, and basic principles of Anglo-American justice, amongst other sources.

Should defendant attempt to establish through testimony that she has a legal right to protect her bodily integrity or otherwise offer legal conclusions on that issue, the court is already empowered to use its gatekeeping function to interrupt such testimony and exclude it on the grounds that it is not a proper subject for lay witness opinion evidence. Unless such an unlikely event transpires, the court need not reconsider its prior decision regarding the issue at this time.

### III. ADMISSION OF EVIDENCE AND CERTAIN WITNESSES

Finally, the government again seeks to limit defense witness testimony in the guise of asking for clarification about what topics defense witnesses may be questioned about in light of the court's May 4 pretrial order. The court has already clearly stated that certain defense videos would be pre-admitted either in their entirety or in part. The government believes that this conflicts with the court's order limiting testimony from witnesses that did not witness the alleged assault.

The government takes an unnecessarily complicated view of defendant's plan to call witnesses in this case. Defendant is charged with assaulting a federal officer. The individuals from defendant's witness list identified in the government's supplemental trial memorandum (See Gov't Supp. Memo at 11-12) are all eyewitnesses to the conduct from police and protesters

DEFENDANT'S SUPPLEMENTAL TRIAL MEMORANDUM – Page 7

that led up to and constituted the alleged assault. They are prepared to testify to facts that would help the jury to conclude that defendant's actions did not actually constitute an assault under one of several defense theories of the case. The value of each witness lies not in the fact that each saw the exact same sequence of events, but that each saw different bits and pieces of the overall event which no single person or perspective could fully capture.

The court's rulings as to the admitted defense evidence and scope of witness testimony are clear and unambiguous. Witnesses are permitted to testify about the alleged assault and events leading to it, even if they did not directly witness the interaction between Officer Perez and defendant. Witnesses are limited from providing extensive narrative testimony about ancillary matters such as defendant's band, national events, experience at ICE protests either generally or on the day of the incident, and anything unrelated to the period of time immediately preceding the alleged assault. These rulings permit defense witnesses to generally testify about the events depicted in Exhibits 101-103, which serve to provide context for the interactions between police, protesters, band members, and defendant. No further clarification is necessary to identify what witnesses may testify about.

The government seeks to interpret the court's orders to limit any testimony about the incident to the bare sequence of actions between Officer Perez and defendant. This is part of an ongoing effort to prevent defendant from offering contextualizing information about her purpose for attending the protest, the protest dynamics leading up to Officer Perez's charge at defendant and their subsequent interaction, and other evidence which might allow the jury to understand why defendant had a reasonable belief that self-defense was required and why the scope and scale of the police actions necessitated defendant's actions. The government's attempts to limit defense witness testimony are unduly restrictive and will serve to deprive defendant of her ability

DEFENDANT'S SUPPLEMENTAL TRIAL MEMORANDUM – Page 8

to present a full defense to her actions, particularly when considering her dual theories of inability to establish *mens rea* and self-defense. The activities of all actors on scene and the perceptions of all defense witnesses are directly relevant to the jury's assessment of defendant's actions and asserted defenses. Accordingly, that testimony should not be limited any further than is already identified in the court's pretrial order.

Also of note, there were a number of federal officers on scene who engaged in forceful behavior against defendant and other nearby protesters during the incident in question, including by deploying pepper spray and tear gas, using aggressive and concerted tactics against demonstrators, and employing the strength and bodyweight of multiple officers to effectuate restraints and arrests. All of their actions are collectively relevant to establish what defendant experienced and set the stage for her testimony about her own experience. Attempting to limit this testimony to only interactions between Officer Perez and defendant ignores how other officers acting in concert with Officer Perez deployed force that acted as a multiplier or extension of the officer's own agency. As a result, defense witnesses must be able to testify about the full sweep of events shown on camera as Exhibits 101-103, 105, and 106. The court's existing ruling amply encompasses this testimony and permits introduction of evidence that is sufficient to contextualize these events while not being excessive or prejudicial. There is no reason for the court to revise its rulings on these points, and defendant should be permitted to call the witnesses she has already identified.

In sum, the government alleges that there was an assault. Defendant has eyewitnesses who will testify to perceptions that could support a verdict that there was no assault. Defendant is entitled to adduce those witnesses' testimony about their perceptions, even if they had different lines of sight than defendant. The matter need not and should not be overcomplicated.

DEFENDANT'S SUPPLEMENTAL TRIAL MEMORANDUM – Page 9

## CONCLUSION

For the reasons articulated herein, defendant asks the court to decline to modify its previous evidentiary rulings or pretrial order.

Dated: May 7, 2026

Respectfully submitted,

/s/ Bear Wilner-Nugent
Bear Wilner-Nugent, OSB #044549
Attorney for Defendant Oriana Rebecca Korol

**CERTIFICATE OF SERVICE**

I hereby certify that I served the foregoing DEFENDANT'S SUPPLEMENTAL TRIAL MEMORANDUM on Andrew T. Ho and Katherine A. Rykken, Esqs., attorneys for plaintiff United States of America, via CM/ECF on May 7, 2026. I further certify that Mr. Ho and Ms. Rykken are registered CM/ECF users.


Dated: May 7, 2026

Respectfully submitted,

/s/ Bear Wilner-Nugent
Bear Wilner-Nugent, OSB #044549
Attorney for Defendant Oriana Rebecca Korol

CERTIFICATE OF SERVICE